# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

DINETHA L. RAYNER, Individually
and as Administrator of the
Estate of KELSEY JEROME RAYNER,
SR.,

     Plaintiff,

v.

APPLING COUNTY SHERIFF'S
OFFICE, SHERIFF MARK MELTON,
APPLING COUNTY CORRECTIONS
OFFICERS ADAM BELL, ANTHONY
BARWICK, JEFFERY HAMILTON,
NADIA WATTS, ELAINE DOWNDEY,
ERNESTINA MERCED, BRANDON
GRIFFIS, and WILSON EDWARDS,
Individually and in their
Official Capacities,
SOUTHEAST CORRECTIONAL
MEDICAL GROUP, LLC, KACEY
NEWBERRY, LPN, CHRISTI
TURNER, LPN, LYNN MARSH, LPN,
KNICOLE LEE, FNP, JOHN DOE,
ADVANCED PRACTICE NURSE, AND
JOHN ROE, M.D.

     Defendants.

CV 2:19-048

## ORDER

Before the Court are two motions: (1) Defendants Southeast
Correctional Medical Group, LLC ("SECMG"), Kasey Newberry, Christi
Turner, Lynn Marsh, and Knicole Lee's Motion to Dismiss Count IV
of Plaintiff's Amended Complaint, dkt. no. 26; and (2) Defendant
Sheriff Mark Melton, in his individual capacity and official

capacity as Sheriff of Appling County, Adam Bell, Anthony Barwick, Jeffery Hamilton, Nadia Watts, Elaine Dowdney, Ernestina Merced, Brandon Griffis, and Wilton Edward's Motion to Dismiss, dkt. no. 28. These Motions have been fully briefed and are ripe for review. For the reasons provided below, Defendant SECMG, Newberry, Turner, Marsh, and Lee's Motion is **DENIED**. Defendant Sheriff Melton, Appling County Sheriff's Office, Bell, Barwick, Hamilton, Watts, Dowdney, Merced, Griffis, and Edward's Motion is **DENIED**.

## BACKGROUND

The facts stated herein are taken solely from Plaintiff's Amended Complaint and are assumed to be true pursuant to Rule 12(b)(6). On or about October 1, 2016, Sheriff Melton and SECMG executed an agreement that provided in relevant part:

> SECMG will provide emergency medical treatment to inmates as necessary and appropriate on site. With the assistance of the Sheriff's officers and 911 services, SECMG will arrange for emergency service to be provided at local hospitals. Appling County Sheriff's Office will be responsible for the cost of emergency transportation and treatment.

Dkt. No. 24 ¶ 14.

On April 16, 2017, Decedent, Kelsey Jerome Rayner, Sr., was booked into the Appling County Jail. Id. ¶ 15. On April 17, 2017, SECMG employees performed a triage/receiving screening on Decedent. Id. ¶ 16. During the screening, Decedent's medical history showed that he suffered a "nervous breakdown" in 2008, that he had "a history" of being prescribed Risperdal and Prozac,

AO 72A
(Rev. 8/82)

and that he had been diagnosed with manic depression and schizophrenia. Id. ¶ 17. On April 18, 2017, Decedent bonded out of the Appling County Jail. Id. ¶ 18.

On June 28, 2017, Decedent was again arrested and booked into the Appling County Jail. Id. ¶ 19. On June 29, 2017, Decedent was taken to the local ER because he complained of chest pains. Id. ¶ 23. The test results were normal, and he was returned to the jail. Id. On June 30, 2017, SECMG again did a triage/receiving screening on Decedent. Id. ¶ 20. This time Decedent's medical history showed "a history" of bipolar depression, prior use of Vistaril and Clonidine, and hospitalization in 2012 for a "nervous breakdown." Id. ¶ 21. During this screening, Decedent was crying and speaking rapidly—both signs of depression. Id. ¶ 22. Later that day, Decedent bonded out and was released. Id. ¶ 24.

On July 14, 2017, Decedent's bonding company "came off their bond" on a misdemeanor charge against Decedent, but Decedent's bond for pending felony charges remained in force. Id. ¶ 25. On July 15, 2017, Decedent was arrested by the Appling County Sheriff's Office. Id. ¶ 26. On July 16, 2017, Defendants Lee and Marsh performed another triage/receiving screening of Decedent. Id. ¶ 27. During that screening, Decedent had a 99.9 degree fever. Id. ¶ 29. Also on that day, Decedent was placed in administrative segregation. Id. ¶ 31.

On July 20, 2017, Defendant Turner examined Decedent and performed a urinalysis. Id. ¶ 32. The urinalysis indicated high bilirubin. Id. Defendant Newberry was aware at that point that Decedent had "something . . . going on with the liver." Id. From this day to his death on July 26, 2017, Decedent continued to exhibit signs of intense stomach pain. Id. Indeed, on July 21, Defendant Newberry noted in Decedent's chart that he was complaining of stomach pain and that blood work was ordered to be taken on July 22, 2017. Id. ¶¶ 33, 34. On July 22, Defendant Marsh was scheduled to be present at the jail for the blood work, but he did not show up. Id. ¶ 38. Instead, only Defendant Newberry was there, but she did not take any blood for analysis because she did not know how to do that. Id. ¶ 39. At no time after July 22, 2017, was blood taken from Decedent for analysis. Id. ¶ 40.

On July 24, 2017, Decedent was in obvious physical distress. Id. ¶ 44. Decedent was taken to the State Court of Appling County that day, and he complained to the judge that he had been passing blood and that he "really need[ed] [his] body checked out." Id. ¶ 45. Defendant Officer Bell was present when Decedent complained to the judge. Id. ¶ 48. Officer Bell, nevertheless, did not attempt to get medical treatment for Decedent. Id. After returning from court on July 24, Decedent used his intercom system in his jail cell to contact the guards at least five times prior to his death on July 26, 2017. Id. ¶ 49.

4

According to the Amended Complaint, on July 25, 2017, Decedent began experiencing increased distress from the infection that would soon kill him; he ate nothing that morning and was kneeling down with his head and elbows on the floor. Id. ¶ 51. Decedent was not seen by Defendants John Doe or John Roe, M.D., when they visited the jail that day because Decedent's labs were not complete. Id. ¶ 52. Decedent also did not eat that evening. Id. ¶ 53.

On the morning of July 26, 2017, Decedent began repeatedly vomiting. Id. ¶ 55. At around 3:00 pm, up until his death that night, Decedent was either writhing in pain or completely still "in a pain pose." Id. ¶ 60. Decedent could be observed by the guards on a monitor. Id. Another inmate told the guards that Decedent needed medical attention. Id. ¶ 61. Later, an inmate used her intercom to call for medical attention for Decedent so many times that the control tower disabled her intercom button. Id. ¶¶ 76-78. That inmate could hear Decedent groaning and crying for help. Id. ¶ 76. After her intercom was disabled, the inmate took off her bra and waived it in front of the camera; the guards used the intercom to contact her, and she again asked for medical assistance for Decedent but to no avail. Id. ¶ 79. Several of the Defendant Officers came and checked on Decedent that evening, but none offered him assistance until he was found lifeless at about 9:57 p.m. Id. ¶¶ 63, 70-75, 84, 88-89. Prior to his death

AO 72A
(Rev. 8/82)

and because of the smell, one of the guards even had to cover her mouth and nose with her shirt when she entered Decedent's cell to check on him.  Id. ¶ 74.  In the interim, Decedent's stomach became massively distended, and he tried to push himself up off the floor twice, but failed both times.  Id. ¶¶ 64-65, 82-83.

Because of these alleged events, Plaintiff, as the administratrix of Decedent's estate, seeks damages for alleged violations of federal and state law.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must accept as true the facts set forth in the complaint and draw all reasonable inferences in the plaintiff's favor.  Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).  Although a complaint need not contain detailed factual allegations, it must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court accepts

AO 72A
(Rev. 8/82)

the allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). However, the Court does not accept as true threadbare recitations of the elements of the claim and disregards legal conclusions unsupported by factual allegations. Iqbal, 556 U.S. at 678-79. At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

## DISCUSSION

As an initial matter, the Court finds that the Amended Complaint is not a shotgun pleading because it provides Defendants fair notice of the claims set forth against them and the factual bases for each claim. To the extent Defendants seek dismissal of the entire Amended Complaint, that motion is **DENIED**.

### I. Plaintiff's Negligence Per Se Claims: Count IV of the Amended Complaint

Defendants SECMG, Kasey Newberry, Christi Turner, Lynn Marsh, and Knicole Lee move to dismiss Count IV of the Amended Complaint. This Count is only lodged against these Defendants and is a state law negligence per se claim. Defendants argue that this Count is

AO 72A
(Rev. 8/82)

due to be dismissed because Plaintiff cannot establish a statutory duty upon which to rest her claim.

It is axiomatic that for a plaintiff to succeed on a negligence cause of action, he or she must first establish "a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm." Schaff v. Snapping Shoals Elec. Membership Corp., 767 S.E.2d 807, 809 (Ga. Ct. App. 2014). In a negligence per se claim, the duty that satisfies this requirement can be found in a statute, which is what Plaintiff alleges here. Plaintiff points to four Georgia statutes that establish a duty that these Defendants allegedly breached: (1) O.C.G.A. § 42-5-2(a); (2) O.C.G.A. § 42-4-4(a)(2); (3) O.C.G.A. § 42-4-51(b); and O.C.G.A. § 42-4-32(d).

At this stage of the proceeding, Plaintiff has satisfied the requirements of Twombly and Iqbal with regard to Count IV. The issue may be revisited at the summary judgment phase; however, the Motion to Dismiss Count IV is **DENIED**.

## II. Plaintiff's Failure to Train Claim: Count VII of the Amended Complaint

Count VII is a 42 U.S.C. § 1983 failure to train claim against Defendant Sheriff Melton in his individual capacity and official capacity as Sheriff of Appling County. "In limited circumstances, a [sheriff's] decision not to train certain employees . . . to avoid violating citizens' rights may rise to the level of an

8

official government policy for purposes of § 1983." Connick, 563 U.S. at 61. But "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. at 62. Here, Plaintiff has not alleged a pattern of similar constitutional violations by untrained deputies. Nevertheless, whether the case fits in the "ordinarily necessary" class of cases or not will be established in discovery. For now, the Motion to Dismiss Count VII is **DENIED**.

## CONCLUSION

For the reasons provided, Defendant SECMG, Newberry, Turner, Marsh, and Lee's Motion to Dismiss is **DENIED**. Defendant Sheriff Melton, Appling County Sheriff's Office, Bell, Barwick, Hamilton, Watts, Dowdney, Merced, Griffis, and Edward's Motion to Dismiss is **DENIED**.

**SO ORDERED**, this 14th day of August, 2019.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
Rev. 8/82)